NOT FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| In Re: Affiliated Physicians and Employers<br>Master Trust d/b/a Member Health Plan NJ | Case No. 21-14286 (MBK) |
| Affiliated Physicians and Employers Master Trust<br>d/b/a Member Health Plan NJ,<br><br>     Plaintiff,<br>v.<br>Department of Treasury, Internal Revenue Service,<br>     Defendant. | Chapter 11<br><br>Adv. Pro. No. 22-01177 (MBK)<br><br>Hearing Date: October 6, 2022 |

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court by way of Affiliated Physicians and Employers Master Trust d/b/a Member Health Plan NJ's ("Plaintiff") bankruptcy case (Case No. 21-14286) and subsequent adversary proceeding (Adv. Pro. No. 22-01177) ("Adversary Complaint"), and on the Department of Treasury, Internal Revenue Service's ("IRS" or "Defendant") Motion to Dismiss Plaintiff's Adversary Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1] The issue before the Court is rather straightforward. Defendant argues the Plaintiff is a "covered entity," under the Patient Protection and Affordable Care Act ("ACA"), and thus is required to pay annual health

---

[1] Unless otherwise specified, all ECF Nos. will refer to docket entries in the instant adversary proceeding: Adv. Pro. No. 22-01177.

insurance tax payments ("Hit Payment" or "Hit Payments"). For tax years 2015, 2016, 2018 and 2020, the Plaintiff paid a total of $8,891,397.32 in Hit Payments. The Plaintiff seeks to challenge liability for these taxes and recover these Hit Payments through this adversary proceeding. Oral argument was held on October 6, 2022. For the reasons that follow, this Court grants the Motion, in part. Counts II and IV are dismissed with prejudice as to all tax years; and Count I, III and V are dismissed with prejudice for tax years 2015, 2016, and 2018. Counts I, III survive dismissal as to the Hit Payment for tax year 2020.

I.   *Venue and Jurisdiction*

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all Bankruptcy cases to the Bankruptcy Court. As explained in detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

II.  *Background*

On May 24, 2021, Plaintiff filed a voluntary petition for relief under chapter 11, Subchapter V of the United States Bankruptcy Code ("Petition Date"). ECF No. 1, Case No. 21-14286. On March 21, 2022, this Court entered an order confirming Plaintiff's Subchapter V plan for liquidation. The Adversary Complaint, filed on June 28, 2022, involves two parties: the Plaintiff and the IRS. The Plaintiff is a non-profit, self-funded multiple employer welfare arrangement ("MEWA") under the provisions of 29 U.S.C. Ch. 18 (the "Employee Retirement Income Security Act") and N.J.S.A. 17B:27C-1, et seq. (the "Self-Funded Multiple Employer Welfare Arrangement Regulation Act") and was registered annually with the New Jersey Department of Banking and

Insurance ("NJ DOBI"). *Adv. Compl,.* ECF No. 1. The IRS is the federal government agency collecting taxes on behalf of the United States of America.

The Adversary Complaint seeks recovery of Hit Payments made by the Plaintiff to the IRS for tax years 2015, 2016, 2018 and 2020. *Ex. A – Adv. Compl.*, ECF No. 1; *id.* at ¶ 29. Through this action, the Plaintiff seeks: (1) a finding that the Plaintiff is not a covered entity under the Affordable Care Act § 9010(c)(1) and, thus, entry of judgment in favor of the Plaintiff against the IRS under 11 U.S.C. § 505 (*Count I*); (2) turnover of all previously collected Hit Payments pursuant to 11 U.S.C. § 542(a) (*Count II*); (3) recovery of any Hit Payments made within two years of the petition date that may be fraudulent transfers pursuant to 11 U.S.C. § 548 (*Count III*); (4) recovery of any Hit Payments made within four years of the Petition Date that may be fraudulent transfers under 11 U.S.C. § 544 and N.J.S.A. 25:2-25(b) and/or 27(a) (*Count IV*); and (5) recovery of any avoided transfers under 11 U.S.C. § 550 (*Count V*).

In lieu of filing an answer to the Adversary Complaint, the IRS filed this Motion to Dismiss seeking dismissal of the Adversary Complaint in its entirety. The IRS contends this Court does not have subject matter jurisdiction and the Plaintiff fails to state any claim for which relief may be granted.

III.    *Motion to Dismiss*

The IRS filed this Motion pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and (6), for failure to state a claim which are both applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7012. With respect to the latter, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.' " *Fleisher v. Standard Ins.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). When

reviewing a motion under Rule 12(b)(6), a court must "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff, and judgment should not [be] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002) (citation omitted); *see also Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 14 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (citing *Twombly* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).

To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the Court must conduct a three-step inquiry. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.
> *Santiago*, 629 F.3d, 121 at 130 (quotations omitted).

### A. *Subject Matter Jurisdiction*

A threshold issue for this Court is whether the Plaintiff filed timely tax refund requests. As the IRS points out, "[u]nder 11 U.S.C. § 505, a bankruptcy court has jurisdiction over a Plaintiff's claim for tax refund if the Plaintiff has already filed a proper claim for refund with the IRS." *Mem. of Law in Supp. of Mot. to Dismiss* 13, ECF No. 4-2. Here, the IRS asserts that this Court lacks subject matter jurisdiction—and Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1)—because the Plaintiff failed to timely request a refund for tax years 2015, 2016, and 2018. The timeliness of tax refunds is governed by statute: 26 U.S.C. §§ 6511(a) and 7422(a).

Section 6511(a) provides that a "[c]laim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer *within 3 years from the time the return was filed or 2 years from the time the tax was paid*, whichever of such periods expires the later . . . ." 26 U.S.C. § 6511(a) (emphasis added). Should this Court find that the Plaintiff did not make timely refund requests, consistent with the statute, the Plaintiff would be unable to obtain relief in this Court as "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been **duly** filed with the Secretary . . . ." 26 U.S.C. § 7422(a) (emphasis added). Notably, properly filed refund requests can be "formal" or "informal."

In considering the timeliness of the refund requests, the Court considers the information submitted with the Plaintiff's Adversary Complaint. Specifically, Plaintiff provides proof of the Hit Payments made in connection with tax years 2015, 2016, 2018, and 2020. *Ex. A – Obj. to Mot. to Dismiss Compl.*, ECF No. 7-1. The IRS does not contest receipt of these payments nor the date the Plaintiff made these payments.

| **Tax Year** | **Hit Payment Amount** | **Payment Settlement Date**[2] |
|---|---|---|
| 2015 | $1,081,128.47 | September 30, 2015 |
| 2016 | $1,365,734.41 | September 15, 2016 |
| 2018 | $3,174,786.20 | September 28, 2018 |
| 2020 | $3,269,748.24 | October 7, 2020 |

---

[2] This is identified as the "Settlement Date" on the Electronic Federal Tax Payment System documents. *Ex. C – Adv. Compl. 8, 13, 18 and 23*, ECF No. 1-3.

1. *Formal Refund Request*

The Court first addresses the timeliness of Plaintiff's formal refund requests. The IRS received the Plaintiff's 2015 tax return on April 1, 2015; the Plaintiff's 2016 tax return on March 21, 2016; and the Plaintiff's 2018 tax return on April 9, 2018. *Ex. 104 –Mot. to Dismiss*, ECF No. 4-6. On or about December 17, 2021, the Plaintiff submitted Form 843, entitled, "Claim for Refund and Request for Abatement" which constituted Plaintiff's formal refund requests for tax years 2015, 2016, 2018 and 2020 ("Formal Refund Request"). *Obj. to Mot. to Dismiss.* ¶ 24, ECF No. 7; *Ex. A – Obj. to Mot. to Dismiss*, ECF No. 7-1. However, under 26 U.S.C. § 6511(a) the Plaintiff was required to request refunds "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ." Based on the longer statutory period, three-years, the Plaintiff needed to have filed its refund requests with the IRS no later than April 1, 2018, for tax year 2015; March 21, 2019, for tax year 2016; and April 9, 2021, for tax year 2018. Undisputedly, the Plaintiff's Formal Refund Request—submitted on December 17, 2021—was untimely for tax years 2015, 2016, and 2018.

This leaves the refund request for tax year 2020 as the only remaining formal request at issue. Neither party submitted information to the Court as to when the Plaintiff filed its 2020 tax return. It is safe to assume, however, that the return was filed October 2020 at the earliest, but most likely at some time in 2021. Therefore, pursuant to statute, the Plaintiff has until 2023 or 2024 to file a refund request. Accordingly, this Court retains subject matter jurisdiction under 11 U.S.C. § 505 because, pursuant to statute, Plaintiff's time to file a refund request has not expired yet under the statute.

*2. Informal Refund Request*

As for an informal refund request, the Plaintiff asserts that a series of email exchanges and conversations ("Email Exchanges") between the Plaintiff's retained expert, Christopher Condeluci, and the Treasury Department serve as foundation for timely "informal" refund request with respect to the other years. *Ex. B – Adv. Compl.,* ECF No. 1-2. Plaintiff relies predominantly on an email dated August 31, 2020 (the "August 31st Email") from Mr. Condeluci to certain Treasury Department employees, including Hannah Hawkins, Krishna Vallabhaneni, Carol Weiser, and Aharon Friedman[3] and argues the August 31st Email constitutes an informal refund request. *Id.*; *Condeluci Certification* ¶ 9, ECF No. 1-2. Mr. Condeluci is a licensed attorney and sole shareholder of CC Law & Policy, PLLC which provides legal and policy counsel on insurance and tax matters relating to the ACA, the Internal Revenue Code and the Employee Retirement Income Security Act. *Id.* at ¶¶ 1 & 2. Indeed, Mr. Condeluci had a significant drafting role with respect to the ACA.

Plaintiff contends that the August 31st Email reflects the Plaintiff's request for a refund for tax years 2015, 2016, and 2018. In pertinent part, Mr. Condeluci's August 31st Email stated:

> I wanted to follow-up on our phone conversation on Aug. 12th where we discussed the prospect of providing relief from the HIT Tax for self-insured MEWAs.…As we have also discussed, we are asking for relief from the HIT tax for each year in which self-insured MEWAs were required to pay the Tax to the federal government (e.g., **2014, 2015, 2016 and 2018**). This relief could take the form of refunds to the self-insured MEWAs for the amount of the Tax they paid in these tax years. We are also asking that self-insured MEWAs be exempt from the HIT tax for the 2020 tax year. . . .*Ex. B – Adv. Compl.* 7, ECF No. 1-2 (emphasis added).

As to 2020, the tax payment had not been made by the August 31st Email, so this communication could not possibly be construed as a refund request. The August 31st Email also

---

[3] Plaintiff, to date, has not provided the Court with information as to the titles, responsibilities or duties of these individuals; nor any information as to what role, if any, they may have with respect to refund requests.

provided "suggestions on how Treasury may be able to effectuate the relief we are asking for," including but not limited to: "Modify the Final HIT Tax Regulation," "Issue Non-Enforcement Guidance While You Modify the Final Hit Tax Regulation," and "Issue an Extension for Paying the 2020 Hit Tax Until You Issue the Non-Enforcement Guidance." These suggestions were broad in nature and were directed at MEWAs collectively, as the August 31st Email indicates "[i]n *NO case are self-insured **MEWAs*** noted as either (1) an entity subject to the HIT tax or (2) an entity that meets one of the exceptions to the general rule." *Id.* (emphasis added). Mr. Condeluci sent a follow-up email on September 16, 2020, reiterating that he provided "various ways Treasury and the IRS could provide relief to self-insured **MEWAs**." *Ex. B – Adv. Compl.,* 14, ECF No. 1-2 (emphasis added).

The language and tenor of these Email Exchanges, including the August 31st Email, weigh heavily against any ruling that the August 31st Email should be deemed an "informal" refund request sent on behalf of the Plaintiff. Rather, the thrust of Mr. Condeluci's communications are devoted to lobbying for relief to be accorded to MEWAs, in general, as opposed to specific, defined tax relief for the Plaintiff. Indeed, if the Court were to deem these Email Exchanges as an "informal" refund request, then—given their broad nature—the Email Exchanges would constitute an informal refund request for every MEWA in the country. This Court is no position to make such a determination. Accordingly, the Court declines to deem the August 31st Email an informal request on behalf of the Plaintiff.

B. *Count I*

In Count I, Plaintiff argues that this Court has discretion pursuant to 11 U.S.C. § 505 to determine the Plaintiff's tax liability for tax years 2015, 2016, 2018 and 2020. As an initial matter, for reasons previously discussed, the Court lacks jurisdiction to consider this claim as it pertains

to tax years 2015, 2016, and 2018. At oral argument, Plaintiff suggested that this Court has the capacity to determine the tax liability for those years under § 505, notwithstanding the inability to direct issuance of refunds. The Court disagrees and would regard such rulings as the equivalent of a declaratory judgment, which it may not enter. As pointed out by Defendant previously, under § 9010(f)(1) of the ACA, Congress provided that Hit liabilities would be treated as excise taxes and limited the available relief for tax payers to refund requests. The Plaintiff seeks monetary relief, which is obtainable through a tax refund suit and declaratory relief, being prospective in nature, is unnecessary (especially since the taxes at issue have been repealed for calendar years beginning after December 31, 2020). Accordingly, the following analysis is limited to whether Count I survives dismissal as it relates to tax year 2020.

Plaintiff's primary argument is that it "is not a 'covered entity' under the ACA because [Plaintiff] is not an 'entity which provides health insurance,' " and, as a corollary, does not have tax liability for those years. *Adv. Comp.* ¶¶ 33, 71, 72, ECF No. 1. The IRS counters that the Plaintiff is in fact a "covered entity" because the ACA's language is broad "and MEWAs do not fall within any of the exceptions listed in section 9010." *Mem. of Law in Supp. of Mot. to Dismiss* 3, ECF No. 4-2. Further, the IRS contends that even if this Court finds the language of the ACA ambiguous as to whether the Plaintiff is a "covered entity," this Court must give deference—pursuant to the dictates of the Supreme Court's holding in *Chevron v. NRDC, Inc,* 467 U.S. 837, 842-43 (1984)—to the IRS's interpretive ruling of 26 C.F.R. § 57.2—to wit, that MEWAs fall within the definition of a "covered entity."[4]

---

[4] The statute defines a "covered entity" as "any entity with net premiums written for health insurance for United States health risks in the fee year if the entity is "licensed to engage in the business of insurance in a State and that is subject to State law that regulates insurance (within the meaning of section 514(b)(2) of the Employee Retirement Income Security Act of 1974 (ERISA)) . . . ." 26 C.F.R. § 57.2(b)(1).

The Plaintiff seeks to have this Court interpret 26 C.F.R. § 57.2, as it applies to the ACA, in a manner which conflicts with the IRS's interpretation. This Court is guided by the Supreme Court's ruling in *Chevron*:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. 837, 842-43 (1984) (footnotes omitted).

Although this Court finds the plain language of the ACA's definition of a "covered entity" to be ambiguous, such that a dispute arises as to whether MEWAs are an entity that "provides health insurance," this Court does not have a sufficient factual record to determine the reasonability of the IRS's interpretation and application of 26 C.F.R. § 57.2 to the ACA, and whether the Plaintiff is a "covered entity" under the ACA. The Plaintiff's refund request for tax year 2020 survives dismissal in so far as to allow the parties to develop a more expansive factual record to determine the legislative intent underlying the employed definition, including the scope of the phrase "engage in the business of insurance." Accordingly, Count I is dismissed with prejudice for tax years 2015, 2016, and 2018. Tax year 2020 survives dismissal.

  C. *Count II*

In Count II Plaintiff seeks turnover of the Hit Payments pursuant to 11 U.S.C. § 542(a). However, to properly plead a claim for turnover under § 542, a litigant "must allege an undisputed right to recover the property claimed." *In re Roman Cath. Diocese of Harrisburg*, 640 B.R. 59, 83 (Bankr. M.D. Pa. 2022) (citing *In re Am. Home Mortg. Holding*, 458 B.R. 161, 169 (Bankr. D.

Del. 2011)); *see also, e.g.*, *In re AEH Trucking Co., LLC*, 586 B.R. 566, 577 (Bankr. M.D. Pa. 2018) (stating that money held by IRS was no longer property of the estate and, thus, could not be subject to turnover under § 542); *In re Dots, LLC.*, No. 14-11016 (MBK), 2017 WL 3311223, at *7 (Bankr. D.N.J. June 16, 2017) (collecting cases and stating that "in order to recover property under § 542, the property must, first and foremost, be undisputed property of the bankruptcy estate"). Here, Plaintiff's entitlement to a refund of the Hit Payment is not established.

Pertitently, the crux of this entire proceeding is whether the Plaintiff is a "covered entity" as defined by the ACA. If the Court ultimately agrees with the IRS that the Plaintiff a "covered entity," then the Plaintiff's Hit Payments were proper. Conversely, if the Court finds that the Plaintiff is not a "covered entity," then the perhaps the Plaintiff may recover these Hit Payments. Either way, the Hit Payments are in dispute and use of the turnover vehicle provided under § 542 is inappropriate. As a result, Count II of the Adversary Complaint is dismissed for all tax years.

### D. *Counts III & IV*

In Counts III and IV of the Adversary Complaint, the Plaintiff seeks to avoid the Hit Payments made within two years of the Petition Date (pursuant to the reach-back under 11 U.S.C. § 548) and made within four years of the Petition Date (pursuant to the reach-back under N.J.S.A 25:2-25(b) and/or 27(a), made applicable under 11 U.S.C. § 544(b)(1)). Given that the applicable statutes provide only two-year and four-year reach-back periods, the payments at issue in this case are limited to the $3,174,786.20 Hit Payment for tax year 2018 and the $3,269,748.24 Hit Payment for tax year 2020. The remaining payments—for tax years 2015 and 2016—are not subject to claw back as the payments made for these tax years fall outside of the two-year and four-year reach-back periods.

As discussed, the Court is without jurisdiction to address the Plaintiff's claim as it pertains to tax year 2018. In any event, it remains the view of this Court that fraudulent transfer claims under § 544(b)(1), being derivative of applicable nonbankruptcy state law claims, must fail because the IRS has sovereign immunity. *See In re Oncology Assocs. of Ocean Cnty. LLC*, 510 B.R. 463, 469 (Bankr. D.N.J. 2014) (holding that trustee's § 544(b) claim under New Jersey fraudulent transfer law failed because the United States held sovereign immunity). Indeed, the Plaintiff's claim could only succeed if the Plaintiff demonstrates that it has "the ability bring suit against the United States," which is "a substantive requirement under New Jersey fraudulent transfer law." *Id.* Here, the Plaintiff is unable to do so because the IRS has sovereign immunity from New Jersey fraudulent transfer law, which is not abrogated under the Bankruptcy Code. *See* 11 U.S.C. § 106(a)(1). For those reasons, Count IV is dismissed with prejudice as to all tax years.

Returning to Count III, the Plaintiff seeks to avoid Hit Payments as fraudulent transfers under § 548, arguing that it "should never have been subject to an assessment or required to make H[it] Payments" and that it "received less than reasonably equivalent value [for the transfer]." *Adv. Compl.* ¶¶ 81, 86 ECF No. 1. Plaintiff relies solely on § 548(a)(1)(B), which states—in relevant part—that a transfer may be avoided if the Plaintiff "received less than reasonably equivalent value in exchange for such transfer." 11 U.S.C. §548(a)(1)(B)(i). However, Plaintiff does not allege it did not receive reasonably equivalent value in exchange for making these Hit Payments. Instead, Plaintiff argues that it "should never have been subject to an assessment" or required to pay the Hit Payments in the first instance. *Adv. Compl.* ¶¶ 80, 81, ECF No. 1. Conversely, the IRS argues that fraudulent transfer law does not "allow a Plaintiff to avoid any payment simply because it later disputes the debt." *Mem. of Law in Supp. of Mot. to Dismiss* 20, ECF No. 4-2.

The Bankruptcy Code does not define "reasonably equivalent value." However, "value" is defined as property exchanged to satisfy "present or antecedent debt of the Plaintiff." 11 U.S.C. § 548(d)(2); *see also* N.J.S.A. § 25:2-24 (defining "value" as property that is exchanged or transferred to satisfy "an antecedent debt"). The IRS notes "the phrase 'present or antecedent debt' is not defined, [however] 'debts' are defined as liabilities on claims, and claims are defined to include rights to payment 'whether or not . . . reduced to judgment, liquidated, . . . [or] disputed.' " *Mem. of Law in Supp. of Mot. to Dismiss*, 20, ECF No. 4-2 (quoting 11 U.S.C. § 101(5), (12); N.J.S.A. § 25:2-21). As noted by the Third Circuit, "a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave." *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (quotation omitted).

To the extent the Plaintiff seeks to have this Court find it did not receive reasonably equivalent value, this Court is unable to do so with respect to tax years 2015, 2016, and 2018 for which the time to contest the tax liabilities has passed. It is well-settled that a "transfer made in satisfaction of an antecedent debt or for an obligation for which the Plaintiff was liable presumptively constitutes reasonably equivalent value." *In re Parker Sch. Uniforms, LLC*, 2021 WL 4553016, at *7 (Bankr. D. Del. Oct. 5, 2021). Because the Plaintiff failed to submit a timely refund request for these tax years, Plaintiff is unable to dispute the tax liability. Accordingly, the Hit Payments for these years were payments for antecedent debts, presumptively for reasonably equivalent value, and cannot be avoided under § 548.

The Plaintiff's remaining claim under § 548 for the Hit Payment for tax year 2020 may go forward and the Plaintiff may be successful if all statutory criteria are satisfied, and this Court finds the Plaintiff is not a "covered entity" under the ACA. Alternatively, if this Court finds the Plaintiff is a "covered entity," then Plaintiff's Hit Payment for tax year 2020 is appropriate and,

thus, not avoidable under § 548. For the foregoing reasons, Count III is dismissed with prejudice for tax years 2015, 2016 and 2018. Count III survives dismissal as it relates to tax year 2020. Count IV is dismissed as to all tax years.

### E. Count V

Plaintiff seeks recovery pursuant to 11 U.S.C. § 550 to the extent any transfers are avoided under other sections of the Bankruptcy Code. Section 550 provides that the value of an avoided transfer may be recovered for the benefit of the estate from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

To the extent the Plaintiff prevails in its position that is it not a "covered entity," which means that it should not have been assessed the Hit Payments and succeeds in proving a claim under § 548, the Plaintiff may recover the value of the Hit Payment made for tax year 2020 pursuant to § 550. As discussed, however, the Plaintiff's refund request for Hit Payments for tax years 2015, 2016, and 2018 were untimely are not recoverable under § 550.

Accordingly, Count V is dismissed with prejudice with respect to Hit Payments for tax years 2015, 2016 and 2018. Count V survives dismissal as it relates to the Hit Payments for tax year 2020.

*IV.*    *Conclusion*

Based on the foregoing, this Court partially grants the IRS's Motion to Dismiss. Counts II and IV are dismissed with prejudice as to all tax years. Count I, III and V are dismissed with prejudice for tax years 2015, 2016, and 2018. Plaintiff's claims in Counts I, III and V survive as to the Hit Payment for tax year 2020. Plaintiff should submit an appropriate Order.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: November 15, 2022